| | |
|---|---|
| **DISTRICT COURT, LARIMER COUNTY**<br>**STATE OF COLORADO**<br>**Larimer County Justice Center**<br>201 LaPorte, Avenue, Suite 100<br>Fort Collins, CO 80521 | DATE FILED<br>May 9, 2025 2:18 PM<br>FILING ID: 718D2A8992B3C<br>CASE NUMBER: 2025CV30437 |
| **Plaintiff:** CARMEN SOLIS<br><br>**v.**<br><br>**Defendants:**<br>USMAN AHMAD,<br>REGAL FREIGHT LINES, LLC,<br>(an Indiana limited liability company)<br>XPO, INC.<br>(a Delaware corporation)<br>XPO LOGISTICS FREIGHT, INC.,<br>(a Delaware corporation)<br>RXO, INC.,<br>(a Delaware corporation)<br>RXO CAPACITY SOLUTIONS, LLC<br>(a Delaware limited liability company)<br>LOWE'S COMPANIES, INC.<br>(a North Carolina corporation)<br>MASTER DISPLAYS, INC. D/B/A DESIGN MASTER DISPLAYS<br>(a North Carolina corporation) | **COURT USE ONLY** |
| *Attorney for Plaintiff*<br>Matthew S. Shows, Esq., #39863<br>The Paul Wilkinson Law Firm, LLC<br>999 Jasmine St.<br>Denver, Colorado 80220<br>Telephone: (303) 333-7285<br>Facsimile: (303) 756-1878<br>Matthew@pwlfllc.com | Case Number:<br><br>Courtroom: |

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Carmen Solis by and through her attorneys, The Paul Wilkinson Law Firm, LLC, and for her Complaint against the above-named Defendants, states as follows:



**EXHIBIT A**

## INTRODUCTION, JURISDICTION, AND VENUE

1. This action is brought pursuant to C.R.S. §13-21-202 based on the wrongful death of Jessie Theresa Solis which occurred on June 10, 2024 in Larimer County, Colorado.

2. The Court has personal jurisdiction over each Defendant, because each Defendant committed one or more tortious acts in the State of Colorado and/or the resulting injury from each Defendant's tortious acts occurred in the State of Colorado.

3. The Court has personal jurisdiction over each corporate Defendant because each transacts business in the State of Colorado.

4. The Court has personal jurisdiction over each corporate Defendant, because each is vicariously liable for the commission of one or more tortious acts in the State of Colorado.

5. Venue is proper in Larimer County, Colorado pursuant to C.R.C.P. 98(c)(5) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

### Plaintiff Carmen Solis

6. At all relevant times, Plaintiff Carmen Solis is and was a citizen and domiciliary of Colorado and is the natural daughter of decedent Jessie Theresa Solis.

7. Decedent Jessie Theresa Solis (**"JESSIE"**) was a citizen and domiciliary of Colorado and not married at the time of her death on June 10, 2024 and therefore Plaintiff Carmen Solis is within that class of persons who may bring the claims herein pursuant to C.R.S. §13-21-202 and §13-21-203.

8. At the time of her death, Decedent JESSIE was 74 years old.

### Defendant Usman Ahmad

9. Upon information and belief, Defendant Usman Ahmad **("AHMAD")** is a citizen and domiciliary of the State of Illinois or Indiana. AHMAD may be served at 5325 Veranda Dr., Noblesville IN 46062.

**Defendant Regal Freight Lines, LLC**

10. Defendant Regal Freight Lines, LLC **("REGAL")** is an Indiana limited liability company with its principal place of business in Libertyville, Illinois. REGAL may be served through its registered agent – Umar Ahmad, 12120 Parkview Ln, Fishers, IN 46038.

11. Upon information and belief, Umar Ahmad is the sibling of Defendant AHMAD.

12. At all relevant times, Defendant REGAL was a registered motor carrier operating under U.S. DOT# 2557218 and Motor Carrier (MC) # 891767 and was subject to the Federal Motor Carrier Safety Regulations ("FMCSR") promulgated by the Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation ("U.S. DOT").

13. At all relevant times, Defendant REGAL operated as a for-hire motor carrier operating a commercial motor vehicle, a tractor-trailer, while transporting property in interstate commerce throughout the United States, including the State of Colorado.

14. Upon information and belief, Defendant REGAL's publicly available safety data revealed at least 78 violations, including, *inter alia*, multiple alcohol violations (including one alcohol violation 4 months before the crash at issue), multiple dangerous driving violations, multiple false reports of drivers records of duty status violations, and multiple other safety violations. Furthermore, Defendant REGAL had a vehicle out-of-service rating exceeding the national average and a driver out-of-service rating exceeding the national average.

Further, the publicly available data indicates that REGAL had at least 2 additional crashes between December 2020 and the date of the crash at issue.

15. Defendant REGAL's publicly available Federal Safety Rating is "Conditional" meaning that records indicate Defendant REGAL was out of compliance with one or more safety requirements.

16. Since the crash at issue, Defendant REGAL has had at least 2 subsequent crashes as of the filing date of this Complaint.

17. Defendant REGAL's motor carrier operating authority was involuntarily revoked by the FMCSA on August 7, 2024 and was reinstated on September 27, 2024.

**Defendants – the XPO Entities**

18. Defendant XPO, Inc. **("XPO")** is a Delaware corporation with its principal place of business in Greenwich, Connecticut. XPO may be served through its registered agent – Registered Agent Solutions, Inc., 36 South 18th Avenue, Suite D, Brighton, CO 80601.

19. At all relevant times, Defendant XPO was a provider of less-than-truckload ("LTL") motor carrier freight shipping services throughout North America, including the State of Colorado.

20. Defendant XPO Logistics Freight, Inc. **("XPOLF")** is a Delaware corporation with its principal place of business in Ann Arbor, Michigan. XPOLF may be served through its registered agent – Registered Agent Solutions, Inc., 36 South 18th Avenue, Suite D, Brighton, CO 80601.

21. Defendant XPO is a publicly traded corporation that provides those LTL motor carrier services through its corporate subsidiaries, including but not limited to Defendant XPOLF.

22. At all relevant times, Defendant XPOLF was a registered motor carrier and broker operating under U.S. DOT# 241829 and Motor Carrier (MC) # 165377 and was subject to the FMCSR and operates as a for-hire motor carrier operating a commercial motor vehicle, a tractor-trailer, while transporting property in interstate commerce throughout the United States, including the State of Colorado.

**Defendants – the RXO Entities**

23. Defendant RXO, Inc. **("RXO")** is a Delaware corporation with its principal place of business in Charlotte, North Carolina. RXO may be served through its registered agent – Registered Agent Solutions, Inc., 838 Walker Road, Suite 21-2, Dover DE 19904.

24. Defendant RXO Capacity Solutions, LLC **("RXOCS")** is a Delaware limited liability company with its principal place of business in North Carolina. RXOCS may be served through its registered agent – Registered Agent Solutions, Inc., 36 South 18th Avenue, Suite D, Brighton, CO 80601.

25. At all relevant times, Defendant RXO was a provider of brokered motor carrier freight transportation services throughout North America, including the State of Colorado.

26. Defendant RXO is a publicly traded corporation that provides those brokered transportation services through its corporate subsidiaries, including but not limited to Defendant RXOCS.

27. At all relevant times, Defendant RXOCS was a registered freight forwarder and broker operating under U.S. DOT# 425389 and Motor Carrier (MC) # 175953 and Freight Forwarder (FF) # 11947 and was subject to the FMCSR and operates as a freight forwarder and broker for transporting property in interstate commerce throughout the United States, including the State of Colorado.

**Defendant Lowe's Companies, Inc.**

28. Defendant Lowe's Companies, Inc. **("LOWES")** is a North Carolina corporation with its principal place of business in North Carolina. Upon information and belief, LOWES may be served through its registered agent – Corporation Service Company, 1900 W. Littleton Boulevard, Littleton CO 80120.

29. Defendant LOWES transacts business by operating retail home improvement stores throughout the United States, including stores in the State of Colorado.

30. Upon information and belief, Defendant LOWES purchases custom commercial retail display fixtures for its retail stores from vendors, including Defendant DMD.

**Defendant Master Displays, Inc.**

31. Defendant Master Displays, Inc. d/b/a Design Master Displays **("DMD")** is a North Carolina corporation with its principal place of business in High Point, North Carolina. DMD may be served through its registered agent – Jerry Hardy, 5657 Prospect Street, High Point NC 27263.

32. Upon information and belief, Defendant DMD designs and manufactures custom commercial retail display fixtures for its customers, including Defendant LOWES.

33. Upon information and belief, Defendant DMD transacts business throughout the United States, including the State of Colorado.

**THE CRASH**

34. On June 10, 2024, at approximately 1:58 p.m. Defendant AHMAD was driving a 2021 VNL 760 Volvo truck tractor (VIN: 4V4NC9EH6MN284411) and pulling a 53-foot enclosed trailer (VIN: 5V8VC532XJT806917) (collectively, "the CMV") northbound on I-25 near mile marker 280 in Larimer County, Colorado.

35. On the same date and time, Decedent JESSIE was a passenger in a 2023 Subaru Outback being driven by James Cooley also traveling northbound on I-25 near mile marker 280 in front of Defendant AHMAD's CMV.

36. On the same date and time, Ricky Cardwell and Diane Cardwell were in a 2018 Acura MDX traveling southbound on I-25 near mile marker 280.

37. On the same date and time, I-25 was undergoing construction, and the number of open lanes was reduced to one lane in each direction from milepost 278 to mile post 282.4 (the "Construction Zone").

38. Due to the Construction Zone on I-25, the speed limit was reduced to 45 miles per hour where the three above-described vehicles were operating.

39. On the same date and time, Defendant AHMAD crashed the front of his CMV into the rear of Mr. Cooley's 2023 Subaru.

40. The violent force of the collision caused Mr. Cooley's Subaru to rotate counter-clockwise into the oncoming southbound lane where it was then struck on the passenger side by the front of the Cardwell's Acura.

41. The force of the collision between Mr. Cooley's Subaru and the Cardwell's Acura caused the Subaru to roll over.

42. The force of the collision between the CMV and Mr. Cooley's Subaru caused the CMV to crash into the separator between I-25 and the east Frontage Road, where it came to rest.

43. Decedent JESSIE and Mr. Cooley were killed in the crash.

44. Upon information and belief, the Cardwells were severely injured in the crash.

## THE FELONY CRIMINAL CASE AGAINST DEFENDANT USMAN AHMAD

45. On or about June 14, 2024, as a result of the crash, Defendant AHMAD was charged by the Larimer County District Attorney with the following criminal felonies:

**Count 1** - 18-3-106(1)(a) VEHICULAR HOMICIDE-RECKLESS DRIVING

**Count 2** - 18-3-106(1)(a) VEHICULAR HOMICIDE-RECKLESS DRIVING

**Count 3** - 18-3-205(1)(a) VEHICULAR ASSAULT-RECKLESS

**Count 4** - 18-3-205(1)(a) VEHICULAR ASSAULT-RECKLESS

in the Larimer County District Court in case number 2024CR000876, styled *The People of the State of Colorado v. Ahmad, Usman*.

46. As of the filing date of this Complaint, the above-mentioned felony criminal case against Defendant AHMAD remains pending.

47. Defendant AHMAD's actions on June 10, 2024, constitute a felonious killing pursuant to C.R.S. § 15-11-803(1)(b) and § 15-11-803(7).

**<u>THE REGAL BANKRUPTCY CASE</u>**

48. On June 10, 2024, approximately three (3) hours before the crash, Defendant REGAL filed a voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Southern District of Indiana.

49. Defendant REGAL's bankruptcy case was dismissed on July 1, 2024 due to Defendant REGAL's failure to supply documents to the bankruptcy trustee.

**<u>ADDITIONAL COMMON ALLEGATIONS</u>**

50. On information and belief, at all relevant times, Defendant AHMAD was employed jointly as an employee or statutory employee, as defined by 49 U.S.C. § 14102(a), 49 C.F.R. §§ 376.12-376.22, 49 C.F.R. § 390.5 by Defendants XPO, XPOLF, and REGAL.

51. Upon information and belief, at all relevant times, Defendant REGAL owned the 2021 VNL 760 Volvo truck tractor being driven by Defendant AHMAD at the time of the crash.

52. At all relevant times, Defendant AHMAD was an authorized driver of the CMV that crashed into the rear of Mr. Cooley's vehicle.

53. Upon information and belief, the trailer Defendant AHMAD was hauling contained, *inter alia*, a shipment of Defendant DMD's 16 commercial entry door displays (PO# 25571903) (SEAL# 2293206) (Freight Collect) being shipped through interstate commerce from Defendant DMD in High Point, North Carolina on June 6, 2024 to Defendant LOWES' Regional Distribution Center in Cheyenne, Wyoming on June 10, 2024 (hereinafter **"the Load"**).

54. Upon information and belief, the gross vehicle weight of the CMV Defendant AHMAD was operating at the time of the crash was 119,200 pounds, far exceeding the gross vehicle weight limit allowed by the FMCSR and applicable law.

55. Upon information and belief, Defendant AHMAD had been driving nearly 19 hours without a break at the time of the crash, far exceeding the hours-of-service regulations pursuant to the FMCSR and applicable law.

56. The shipper of the Load, Defendant LOWES, hired Defendant XPO (using its subsidiary motor carrier Defendant XPOLF) as a motor carrier to transport the Load from North Carolina to Wyoming.

57. In the alternative, the shipper of the Load, Defendant DMD, hired Defendant XPO (using its subsidiary motor carrier Defendant XPOLF) as a motor carrier to transport the Load from North Carolina to Wyoming.

58. Defendant XPO is identified as the motor carrier on the Bill of Lading for the Load.

59. Upon information and belief, Defendant XPO (through its motor carrier subsidiary Defendant XPOLF) accepted the tender of the Load from the shipper to provide services under its authority as a motor carrier and not as a broker.

60. Upon information and belief, Defendant XPO (through its motor carrier subsidiary Defendant XPOLF) subcontracted with Defendant REGAL to transport the Load for all or a portion of the route from North Carolina to Wyoming.

61. Upon information and belief, Defendant XPO (through its motor carrier subsidiary Defendant XPOLF) had previously entered into an agreement with Defendant REGAL whereby XPO, acting as a motor carrier, agreed to tender freight for transport to REGAL and REGAL agreed to provide transportation of the freight as a motor carrier.

62. Upon information and belief, Defendant XPO (through its motor carrier subsidiary Defendant XPOLF) contracted with Defendant REGAL to use a commercial motor vehicle owned, leased or otherwise controlled by REGAL and a driver employed, leased or otherwise controlled by REGAL to transport the Load for all or part of the route from North Carolina to Wyoming.

63. The shipper of the Load, either DMD or LOWES, knew or in the exercise of reasonable care should have known that the Load was being transported by Defendants REGAL and AHMAD.

64. Upon information and belief, Defendant XPO agreed to pay Defendant REGAL from the proceeds XPO received for transporting the Load from North Carolina to Wyoming.

**FIRST CLAIM FOR RELIEF**
**(Wrongful Death)**
***(Negligence and/or Recklessness of Usman Ahmad)***

65. All preceding paragraphs above are incorporated herein as if set forth verbatim.

66. C.R.S. § 13-21-202 provides for recovery in an action for damages for the death of a person caused by the "wrongful act, neglect, or default" of another, if the act, neglect, or default is "such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof."

67. Pursuant to C.R.S. § 13-21-203(1)(a) and § 13-21-201(1)(a)(IV), Plaintiff Carmen Solis, as Decedent JESSIE's daughter and heir, is a proper plaintiff in a claim for Decedent JESSIE's wrongful death.

68. Defendant AHMAD owed a duty to Decedent JESSIE, to exercise reasonable care in the operation of the CMV involved in the crash.

69. Defendant AHMAD breached his duty to Decedent JESSIE, to exercise reasonable care in the operation of the CMV involved in the crash as more fully set forth herein.

70. Defendant AHMAD was reckless and/or negligent in one or more of the following respects: Speeding; Driving too fast for the conditions (Construction Zone); speeding in a Construction Zone, failing to keep a proper lookout; following too closely; failing to maintain a safe and proper stopping distance; reckless driving; distracted driving; aggressive driving; fatigued driving; driving in excess of allowable hours of service under the FMCSR; operating an overloaded commercial vehicle; failing to properly maintain the

commercial vehicle including but not limited to adequate brakes; careless driving; and in other ways which will be proven at the time of trial.

71. Decedent JESSIE died as a result of fatal injuries sustained in the crash.

72. Decedent JESSIE's death was directly and proximately caused by the reckless and/or negligent driving conduct of Defendant AHMAD at the time of the crash.

73. As a result of Defendant AHMAD's recklessness and/or negligence, which caused the wrongful death of Decedent JESSIE, her children, including Plaintiff, sustained mental, emotional and psychological injuries, damages, and losses, including, but not limited to, economic losses and non-economic losses.

74. As a direct and proximate result of Decedent JESSIE's death, her children, including Plaintiff, have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in this Complaint and Colorado's wrongful death statute.

**<u>SECOND CLAIM FOR RELIEF</u>**
**(Wrongful Death)**
**(*Negligence Per Se of Usman Ahmad*)**

75. All relevant portions of this Complaint are incorporated herein as if fully set forth.

76. Defendant AHMAD, through his negligent, careless, reckless and wrongful acts and omissions, violated applicable codes, ordinances, regulations and/or statutes of the State of Colorado or the United States including, but not limited to, the following:

a. Colorado Revised Statutes § 42-4-1008, Following too closely;

b. Colorado Revised Statutes § 42-4-1401, Reckless Driving;

c. Colorado Revised Statutes § 42-4-1402, Careless Driving;

d. Colorado Revised Statutes § 18-3-106(1)(a), Vehicular homicide;

e. Colorado Revised Statutes § 42-4-1701, Speeding in a Construction Zone; and

f. Colorado Revised Statutes § 42-4-1101, Speeding.

77. The purpose of the aforementioned codes, ordinances, regulations and statutes was to protect against the type of injuries and damages Decedent JESSIE sustained as a result of this incident.

78. Decedent JESSIE was a member of the group of persons that the aforementioned codes, ordinances, regulations and/or statutes were intended to protect.

79. Consequently, Defendant AHMAD's conduct complained of herein constitutes negligence *per se*.

80. As a direct and proximate result of Defendant AHMAD's negligence *per se*, Plaintiff suffered losses and damages as described herein.

81. As a direct and proximate result of the negligence *per se* of Defendant AHMAD, Decedent JESSIE was killed.

82. As a direct and proximate result of Decedent JESSIE's death, her children (including Plaintiff) have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Colorado's wrongful death statute and in this Complaint.

## THIRD CLAIM FOR RELIEF
**(Wrongful Death)**
***(Respondeat Superior – REGAL, XPO, and XPOLF)***

83. All relevant portions of this Complaint are incorporated herein as if fully set forth.

84. Whenever in this Complaint it is alleged that a Defendant (except Defendant AHMAD) did any act or thing, it is meant that the Defendant's agents, officers, directors, servants, employees or representatives did such act or thing and that at the time such act or thing

was done, it was done with the full authorization or ratification of said Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

85. Upon information and belief, Defendants REGAL, XPO, and XPOLF were "motor carriers" pursuant to 49 U.S.C. 13901(c), responsible for the transportation services in interstate commerce of Defendant DMD's goods.

86. On information and belief, at all relevant times, Defendant AHMAD was a servant, agent and statutory employee of Defendant XPO, and at all relevant times was acting within the course and scope of his statutory employment for Defendant XPO. As a result, Defendant XPO is personally liable for all independent negligent, reckless, negligence *per se*, outrageous conduct, willful, wanton and/or intentional acts and is vicariously liable for all negligent, reckless, negligence *per se*, outrageous conduct, willful, wanton, and/or intentional acts committed by its employee, Defendant AHMAD, in the course and scope of his statutory employment and for the death of Decedent JESSIE and the damages suffered by Plaintiff.

87. On information and belief, at all relevant times, Defendant AHMAD was a servant, agent and statutory employee of Defendant XPOLF, and at all relevant times was acting within the course and scope of his statutory employment for Defendant XPOLF and in the furtherance of said employer's business. As a result, Defendant XPOLF is personally liable for all independent negligent, reckless, negligence *per se*, outrageous conduct, willful, wanton and/or intentional acts and is vicariously liable for all negligent, reckless, negligence *per se*, outrageous conduct, willful, wanton, and/or intentional acts committed

by its employee, Defendant AHMAD, in the course and scope of his statutory employment and for the death of Decedent JESSIE and the damages suffered by Plaintiff.

88. On information and belief, at all relevant times, Defendant AHMAD was a servant, agent and/or employee of Defendant REGAL and at all relevant times was acting within the course and scope of his employment for Defendant REGAL and in the furtherance of said employer's business. As a result, Defendant REGAL is personally or vicariously liable for all independent negligent, reckless, negligence *per se*, outrageous conduct, willful and/or intentional acts and all negligent, reckless, negligence *per se*, outrageous conduct, willful, wanton, and/or intentional acts committed by its employee, Defendant AHMAD, in the course and scope of his employment and for the death of Decedent JESSIE and the damages suffered by Plaintiff.

**FOURTH CLAIM FOR RELIEF**
**(Wrongful Death)**
***(Direct Negligence – XPO and XPOLF)***

89. All relevant portions of this Complaint are incorporated herein as if fully set forth.

90. Upon information and belief, Defendant XPO (through its motor carrier subsidiary XPOLF) (for purposes of this Claim for Relief, referred to collectively as "XPO") conducts trucking operations throughout the United States, but they frequently rely on other carriers, especially when their customers' needs cannot be met by Defendant XPO's own fleet.

91. Upon information and belief, Defendant XPO and its agents regularly contract with other trucking companies for purposes of satisfying XPO's contractual obligations as a carrier and the commitments Defendant XPO makes to its customers.

92. Defendant XPO has an obligation and duty to determine whether the other trucking companies upon which it relies to complete its contracts of carriage are safe, reliable, and

conduct their operations in compliance with relevant Federal and State safety laws and regulations.

93. Thus, at all relevant times, Defendant XPO had an obligation and a duty to exercise reasonable care in the control and oversight of the trucking company it selected to satisfy its contractual obligation to deliver the Load that ultimately was assigned to Defendant REGAL and to Defendant AHMAD for transport.

94. At all relevant times, Defendant XPO held itself as the motor carrier for shipment and was subject to the FMCSA and all federal regulations.

95. Upon information and belief, Defendant XPO was hired by or contracted with the shipper of the Load under its motor carrier authority and as a result XPO was a hidden motor carrier responsible under the FMCSA and USDOT for compliance with all Federal and State laws and regulations for the shipment of the Load.

96. At all relevant times, Defendant XPO was obligated to transport the Load pursuant to its contract with the shipper of the Load and all applicable FMCSRs.

97. At all relevant times, Defendant XPO was subject to and required to obey the minimum safety standards established and set forth in the FMCSR, 49 CFR Parts 300-399, either directly or as adopted by the Colorado State Patrol Rules and Regulations Concerning Minimum Standards for the Operation of Commercial Vehicles 8 CCR 1507-1:MCS 6 and pursuant to C.R.S. § 42-4-235(4)(a).

98. At all relevant times, Defendant XPO also had an obligation and a duty to exercise reasonable care in the management and control of the transport of the Load it contracted to deliver, and as the contracting motor carrier it had a non-delegable duty to comply with relevant Federal safety regulations.

99. At all relevant times, Defendant XPO had a duty to conduct a due diligence safety review before contracting with any other trucking company.

100. Defendant XPO had the capacity and ability to determine whether the other trucking companies upon which it relies to complete its contracts of carriage are safe, reliable, and conduct their operations in compliance with relevant Federal and State safety regulations, as such information is readily available through the FMCSA and other resources regularly relied upon in the trucking and logistics industry.

101. It is part of the minimum standards for companies like Defendant XPO to make safety inquiries as part of qualifying and retaining trucking companies before contracting with them.

102. It is part of the minimum standards for companies like Defendant XPO to make safety inquiries on a regular basis after contracting with a trucking company.

103. At all relevant times, on information and belief, Defendant XPO had prior dealings with Defendants REGAL and AHMAD and knew or had reason to know that they required and permitted drivers to operate commercial motor vehicles in an unsafe manner, and in violation of the FMCSR and applicable law.

104. At all relevant times, Defendant XPO was acting through its employees and/or agents and are responsible for the acts of those employees and/or agents pursuant to *respondeat superior*, agency, vicarious liability, statutory employment doctrines, negligent entrustment, negligent hiring of an independent contractor, partnership, joint enterprise, and/or other similar theories of law.

105. At all relevant times, Defendant XPO was the motor carrier.

106. At all relevant times, Defendant REGAL was the sub-carrier.

107. On or before June 10, 2024, the FMCSA made information available to the public regarding REGAL's safety record, in addition to other publicly available information regarding REGAL's safety record, as more fully set forth above.

108. Despite knowing or having reason to know of REGAL's substandard safety records, Defendant XPO nonetheless negligently, carelessly and recklessly retained, hired, supervised, and/or contracted with REGAL before negligently entrusting REGAL to make a time sensitive interstate delivery of the Load while knowing or having reason to know that it would inevitably result in safety risks to the public, including to Decedent JESSIE.

109. At all relevant times, Defendant XPO had the capacity, ability, and duty to exercise direct control over the specific details of transport of the Load, including logistics, dispatching, scheduling, rescheduling, route planning, rerouting, and load consolidation, as well as compliance with relevant Federal and State safety regulations and laws.

110. Defendants XPO and REGAL (collectively, "the Joint Venturers") operated a joint enterprise and/or joint venture for the transport of the Load under which they shared control and profits arising out of the transport of such goods, under which, Defendant AHMAD and/or Defendant REGAL were XPO'S agents, employees, and/or joint venturers such that XPO was responsible for their acts and omissions pursuant to *respondeat superior*, agency, vicarious liability, statutory employment doctrines, negligent hiring of an independent contractor, partnership, joint enterprise, and/or other similar theories of law.

111. At all relevant times, Defendant XPO had actual and/or constructive knowledge that Defendant AHMAD was, in fact, driving the REGAL CMV in violation of Federal safety regulations, including *inter alia*, FMCSR hours-of-service rules, in the course of fulfilling XPO's contractual obligations and while under XPO'S direct supervision and control, but

made no attempt to reschedule the load delivery or otherwise adjust the delivery schedule in order to afford AHMAD a reasonable opportunity to remain in compliance with FMCSR requirements and applicable law, all in violation of XPO'S direct and non-delegable obligations under applicable law including federal safety regulations.

112. As a direct and proximate result of Defendant XPO's negligent, careless, and/or reckless conduct as alleged herein, Defendant AHMAD was aided, abetted, and induced into working without adhering to FMCSR safety regulations and applicable law, all of which proximately caused the June 10, 2024 crash and the death of Decedent JESSIE.

113. Defendant XPO, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

a. The risks associated with unsafe trucking companies;

b. The risks associated with trucking companies that fail to have adequate risk management policies and procedures in place;

c. Failing to have policies and procedures in place to identify unsafe trucking companies;

d. Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess REGAL once hired;

e. Failing to implement and follow a written safety plan;

f. Failing to protect the members of the public, such as Decedent JESSIE, from the risks described above;

g. Failing to ensure that Defendant AHMAD was prudently hired, trained, and supervised to operate a CMV;

h. Failing to use the composite knowledge reasonably available to Defendants to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk; and

i. Failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

114. By reason of, and as a direct and proximate result of XPO's breaches of the above duties which were a cause of the death of Decedent JESSIE, Plaintiff has suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as set forth in the Colorado wrongful death statute and this Complaint.

**FIFTH CLAIM FOR RELIEF**
**(Wrongful Death)**
***(Negligent and/or Reckless Training and Supervision – REGAL)***

115. All relevant portions of this Complaint are incorporated herein as if fully set forth.

116. At all times material hereto, Defendant AHMAD served as an employee of, and for, Defendant REGAL.

117. Defendant AHMAD was acting within the course and scope of his employment with Defendant REGAL at the time of the subject incident.

118. Defendant REGAL had a duty of reasonable care owed to Decedent JESSIE and other members of the public to properly train and supervise its employees, particularly employees such as Defendant AHMAD whose job duties included the operation of motor vehicles, especially tractor-trailer trucks, on public highways.

119. Defendant REGAL breached its duty to properly train and supervise Defendant AHMAD.

120. Defendant REGAL's failure to exercise reasonable care in properly training and supervising Defendant AHMAD constitutes negligence and/or recklessness which directly and proximately caused the death of Decedent JESSIE and Plaintiff's damages.

121. As a direct and proximate result of the negligent and/or reckless training and supervision of Defendant AHMAD by Defendant REGAL, Decedent JESSIE was killed.

122. As a direct and proximate result of Decedent JESSIE's death, her surviving children, including Plaintiff, have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Colorado's wrongful death statute and this Complaint.

**SIXTH CLAIM FOR RELIEF**
**(Wrongful Death)**
**(*Outrageous Conduct – AHMAD*)**

123. All relevant portions of this Complaint are incorporated herein as if fully set forth.

124. Defendant AHMAD engaged in extreme and outrageous conduct by operating a CMV on public highways in a distracted and unsafe manner.

125. Defendant AHMAD's conduct of operating a CMV on public highways in a distracted and unsafe manner was reckless.

126. Defendant AMAD's extreme and outrageous conduct recklessly resulted in the crash killing Decedent JESSIE. The reckless killing of their family caused the Decedent's children, including Plaintiff, severe emotional distress.

127. As a result of the crash, Defendant AHMAD was charged with felonious vehicular homicide for, *inter alia*, the death of Decedent JESSIE.

**SEVENTH CLAIM FOR RELIEF**
**(Wrongful Death)**
**(*Negligent Hiring and/or Selection – LOWES and DMD*)**

128. All relevant portions of this Complaint are incorporated herein as if fully set forth.

129. The shipper of the Load, either Defendant LOWES or DMD, contracted with and/or hired Defendant XPO (which used its motor carrier subsidiary XPOLF) as a motor carrier to transport the Load.

130. The shipper of the Load, either DMD or LOWES, knew or in the exercise of reasonable care should have known that the Load was actually being transported by Defendants REGAL and AHMAD in fulfillment of XPO/XPOLF's contractual obligations as a motor carrier to transport the Load.

131. The shipper of the Load, either DMD or LOWES, had a duty to exercise reasonable care to ensure that any motor carriers it hired or allowed to transport property in a commercial motor vehicle possessed the knowledge, skill, experience, available equipment, and characteristics that a reasonable person would realize a motor carrier must have to transport a load of cargo in interstate commerce by such a commercial motor vehicle without creating an unreasonable risk of injuries to others.

132. The shipper of the Load, either DMD or LOWES, knew or through the exercise of reasonable care, should have known that Defendants REGAL and AHMAD were unfit and unsafe to transport the Load.

133. The shipper of the Load, either DMD or LOWES, failed to exercise reasonable care and carelessly and negligently did, or failed to do, one or more of the following acts:

a. Failed to exercise reasonable care to investigate whether REGAL and its drivers possessed the knowledge, skills, experience, available equipment and characteristics that a reasonable person would realize a motor carrier and its commercial drivers must have to transport cargo in interstate commerce by

commercial motor vehicle without creating an unreasonable risk of injuries to others; and

b. Allowed REGAL to transport the Load even though it knew, or in the exercise of reasonable care should have known, that REGAL and its drivers lacked the knowledge, skills, experience, available equipment and characteristics that a reasonable person would realize a motor carrier and its commercial drivers must have to transport cargo in interstate commerce by commercial motor vehicle without creating an unreasonable risk of injuries to others.

134. The shipper of the Load, either DMD or LOWES, breached its duty of reasonable care by allowing Defendants REGAL and AHMAD to transport the Load.

135. As a direct and proximate result of the negligent selection and/or hiring of Defendants REGAL and AHMAD and/or allowing Defendants REGAL and AHMAD to transport the Load, Decedent JESSIE was killed.

136. As a direct and proximate result of Decedent JESSIE's death, her surviving children, including Plaintiff, have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Colorado's wrongful death statute and this Complaint.

**<u>ALTERNATIVE CLAIMS FOR RELIEF</u>**

137. In the alternative, the shipper of the Load, either Defendant LOWES or DMD, hired Defendant RXO (using its subsidiary Defendant RXOCS) as a broker to arrange for transport of the Load from North Carolina to Wyoming.

138. In the alternative, Defendant RXO (through its broker subsidiary Defendant RXOCS) selected Defendant REGAL to transport the Load for all or a portion of the route from North Carolina to Wyoming.

139. In the alternative, the shipper of the Load, either Defendant LOWES or DMD, hired Defendant RXO (using its subsidiary Defendant RXOCS) as a motor carrier for transport of the Load from North Carolina to Wyoming.

**EIGHTH CLAIM FOR RELIEF**
**(Wrongful Death)**
***(Broker Negligence – RXO and RXOCS)***

140. All relevant portions of this Complaint are incorporated herein as if fully set forth.

141. As used in this Claim for Relief, RXO and RXOCS will be referred to collectively as "RXO."

142. If it be shown that Defendant RXO was the broker for the transportation of the Load performed by Defendants REGAL and AHMAD at the time of the crash, Defendant RXO is also vicariously liable for Defendants REGAL and AHMAD's negligence and independently liable for its direct negligence.

143. A reasonably prudent broker in the position of Defendants RXO and RXOCS would have found through due diligence that Defendant REGAL had an egregious safety history with numerous reported safety violations prior to June 10, 2024, and would have 1) Rejected and revoked REGAL as a motor carrier to transport the Load, and/or 2) Terminated any agreement with Defendant REGAL to transport the Load prior to the crash on June 10, 2024.

144. As the broker of freight transportation, Defendant RXO represents that it uses its "industry-leading technology" to "filter[] [their] vast carrier pool by geography, equipment, availability, qualifications and rate to help shippers lock in the best fit for each load." [1]

145. Defendant RXO also represents to its customers that it "value[s] diverse perspectives, operate[s] safely, and build[s] strong relationships." [2]

146. When independent contractors are engaged in occupations that require skill or experience and could be hazardous to the safety of others, the entity which retains them owes a duty to the general public to ascertain the qualifications and competence of those it retains. When the engagement requires driving a commercial vehicle, one who selects an independent contractor has an affirmative duty to investigate the independent contractor's ability to act as a safe and reliable motor carrier. A defendant is liable for negligent hiring if it hires an unsafe, unreliable, incompetent or unfit independent contractor whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby increasing the risk of harm to others.

147. Defendant RXO hired Defendant REGAL to fulfill the freight transportation being performed by Defendant AHMAD at the time of the crash. In so doing, Defendant RXO retained Defendant REGAL as Defendant RXO's agent(s) for the fulfillment of the subject transportation.

148. Defendant REGAL was performing a service in the furtherance of Defendant RXO's business at the time of the crash.

149. The negligent acts and omissions of Defendant REGAL in the course and scope of their agency relationship with Defendant RXO were a proximate cause of the injuries and

[1] *See* RXO website at https://rxo.com/shippers/ (last visited 02/21/2025)
[2] *See* RXO website at https://rxo.com/about-us/ (last visited 02/21/2025).

damages sustained by Decedent JESSIE and Plaintiff herein. Therefore, Defendant RXO is vicariously liable to Plaintiff for the negligent acts and/or omissions of its agent(s), representative(s), and/or servants, Defendant REGAL, on the basis of *respondeat superior*. Indeed, Defendant REGAL was negligent in, at least, the following ways:

a. Failing to exercise reasonable care in the interviewing, screening, vetting, and/or hiring of its agent, employee, representative, and/or servant;

b. Failing to exercise reasonable care in the performance and/or execution of a background check on its agent, employee, representative, and/or servant;

c. Failing to exercise reasonable care in the qualification of its agent, employee, representative, and/or servant as a driver and operator of a commercial motor vehicle;

d. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA in the hiring and qualification of its agent, employee, representative, and/or servant as a driver of a commercial motor vehicle;

e. Failing to exercise reasonable care in the training of its agent, employee, representative, and/or servant including but not limited to training its agent, employee, representative, and/or servant to be a safe, careful, and prudent driver of a commercial motor vehicle;

f. Failing to exercise reasonable care in the monitoring and supervision of the activities of its agent, employee, representative, and/or servant;

g. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA regarding training, monitoring, and supervision of

its agent, employee, representative, and/or servant as a driver and operator of a commercial motor vehicle;

h. Failing to exercise reasonable care in maintaining, servicing, repairing, and inspecting the vehicle that its agent, employee, representative, and/or servant was operating at the time of the crash;

i. Failing to comply with, or require compliance with, the applicable state laws as well as the rules and regulations of the FMCSA regarding the maintaining, servicing, repairing, and inspecting of commercial motor vehicles such as (and including) the one being driven by its agent, employee, representative, and/or servant at the time of the crash;

j. Failing to conduct proper maintenance and/or inspections to ensure that Defendant's vehicle was in good mechanical order;

k. Failing to conduct proper maintenance and/or inspections to ensure that Defendant's vehicle was equipped with all the requisite warning devices required under the applicable state laws as well as the rules and regulations of the FMCSA.

l. Failing to supervise whether Defendant AHMAD was operating the CMV safely and adhering to FMCSRs and applicable law regarding, *inter alia*, speed of the CMV and hours-of-service regulations;

m. Failing to require its driver, Defendant AHMAD, to observe and comply with the rules and regulations of the FMCSA under, *inter alia*, 49 C.F.R. § 390.11;

n. Failing to exercise reasonable care to prevent its agent, employee, representative, and/or servant from operating a commercial motor vehicle at a

time or under circumstances where its agent, employee, representative, and/or servant was physically and/or mentally unable to safely drive and operate a commercial motor vehicle;

o. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA regarding its agent, employee, representative, and/or servant's physical and/or mental condition or ability to drive a commercial motor vehicle;

p. Allowing its agent, employee, representative, and/or servant to operate a commercial motor vehicle at a time or under circumstances Defendant REGAL knew, or in the exercise of reasonable care should have known, that its agent, employee, representative, and/or servant was unable to safely drive and operate a commercial motor vehicle;

q. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA by allowing or requiring its agent, employee, representative, and/or servant a commercial motor vehicle at a time or under circumstances when Defendant REGAL knew, or should have known, that its agent, employee, representative, and/or servant was unable to safely drive and operate a commercial motor vehicle; and

r. Aiding and/or abetting violations of the applicable state laws as well as the rules and regulations of the FMCSA;

s. To the extent not already included in these allegations, Plaintiff invokes the legal doctrine of negligent entrustment. In this regard, Plaintiff would show that:

i. Upon information and belief, the CMV being operated by Defendant REGAL as well as its agent, employee, representative, and/or servant at the time of the crash was owned or otherwise under the control of Defendant REGAL;

ii. Defendant REGAL's agent, employee, representative, and/or servant was a reckless and/or incompetent driver and was otherwise unfit and/or unqualified to drive and operate the vehicle in question; and

iii. Defendant REGAL knew, or in the exercise of reasonable care should have known, of such recklessness, incompetence, unfitness, and/or lack of qualification.

150. Defendant REGAL was acting in the course and scope of its agency relationship with Defendant RXO at the time of the crash.

151. Defendant REGAL directed Defendant AHMAD to be in the District of Colorado at the direction, and for the benefit of Defendant RXO and acting in the furtherance of Defendant RXO's business.

152. Defendant RXO is not only vicariously liable for the acts and omissions of its agent(s), representative(s), and/or servants, Defendant REGAL, but Defendant RXO is liable for its own negligence in, *inter alia*, hiring, retaining, vetting, supervising, and maintaining Defendant REGAL as its agent, because Defendant RXO was independently negligent in its background check, engaging, and supervision of Defendant REGAL, when it knew, or should have known, Defendant REGAL was an incompetent or unfit motor carrier.

153. Defendant RXO hired Defendant REGAL to fulfill a shipping agreement that required driving a commercial motor vehicle. In so doing, Defendant RXO became obligated to

properly investigate the fitness and qualifications of Defendant REGAL to act as a motor carrier and its drivers.

154. Because Defendant RXO failed to conduct an adequate investigation of Defendant REGAL and its drivers, it failed to discover that it had hired an incompetent and unfit independent contractor and driver. The failure of Defendant RXO to hire a competent, fit and safe independent contractor and driver was a proximate cause of Decedent JESSIE's death and Plaintiff's damages.

155. Defendant RXO committed acts of omission and commission which acts, taken separately or together, constitute negligence. As a direct and proximate cause of Defendant RXO's negligence, Defendant REGAL was permitted to transport cargo with an improperly maintained commercial motor vehicle driven by an incompetent driver, Defendant AHMAD, in such a careless manner that it led to the severe crash.

156. The negligent acts and omissions of Defendant RXO include but are not limited to the following:

a. Selecting an unsafe, incompetent motor carrier and driver to transport the Load;
b. Ignoring publicly available information that established Defendant REGAL's strong propensity to violate safety rules that apply to motor carriers;
c. Failing to investigate the competency and experience of the motor carrier selected to transport the Load;
d. Failing to investigate the safety and training program of the motor carrier selected to transport the Load;
e. Failing to request references from other shippers and/or entities who have used the motor carrier selected to transport the Load;

f. Failing to investigate the motor carrier's vehicle maintenance program, driver training, enforcement programs and operational structure;

g. Failing to implement adequate procedures for approving motor carriers;

h. Failing to include additional steps to identify unsafe motor carriers;

i. Aiding and/or abetting violations of the applicable state laws as well as the rules and regulations of the FMCSA; and

j. In committing various acts and/or omissions of negligence, both statutory and common law, to be specified in detail at the time of trial.

157. The acts and omissions of Defendant RXO, led to Defendant REGAL and Defendant AHMAD being given the Load and in a position on June 10, 2024 to cause the subject crash. These independent acts, wrongs, and/or omissions, as well as various other acts, wrongs and/or omissions on the part of Defendant RXO amounted to negligence, recklessness, and gross negligence, and were the proximate cause of Decedent JESSIE's death and Plaintiff's damages.

158. Because Defendant RXO's negligence was a proximate cause of the injuries and damages sustained herein, Defendant RXO is jointly and severally liable with the other Defendants.

## <u>NINTH CLAIM FOR RELIEF</u>

**(Wrongful Death)**

***(Motor Carrier Negligence – RXO and RXOCS)***

159. All relevant portions of this Complaint are incorporated herein as if fully set forth.

160. As used in this Claim for Relief, RXO and RXOCS will be referred to collectively as "RXO."

161. If it be shown that Defendant RXO represented to, *inter alia*, its customers, that it was the "Carrier" or otherwise acted in the capacity as a motor carrier for the Load transported by

Defendant AHMAD at the time of the crash, then Defendant RXO was the motor carrier for the Load transported by Defendant AMHAD at the time of the crash.

162. As the motor carrier responsible for the transportation in question, Defendant RXO was acting as the employer of Defendant AHMAD. Defendant RXO was deemed Defendant AHMAD's employer and is vicariously liable and responsible for Defendant AHMAD's negligence, negligence *per se*, and outrageous conduct on the basis of *respondeat superior*.

163. Defendant RXO as well as its agent, employee, representative, and/or servant, Defendant AHMAD, had a duty to exercise ordinary care and operate the CMV safely, reasonably and prudently. Indeed, Defendant RXO as well as its agent, employee, representative, and/or servant, Defendant AHMAD, owed specific duties to Decedent JESSIE as well as the users of the public roads and highways, said duties existing and created by common law, statutory law, as well as applicable and/or relevant regulatory laws, rules, and regulations. Specifically, Defendant RXO was subject to and required to obey the minimum safety standards established by the rules and regulations of the FMCSA, either directly or as adopted under Colorado law and the Colorado statutes and regulations regarding the safe operation of motor vehicles. Defendant RXO had duties to exercise the degree of care that a reasonably careful licensed commercial motor vehicle carrier would use to avoid creating unnecessary hazards and causing harm to others under similar circumstances. Defendant RXO as well as its agent, employee, representative, and/or servant, Defendant AHMAD, breached these duties.

164. Defendant RXO as well as its agent, employee, representative, and/or servant, Defendant AHMAD were guilty of certain acts, wrongs, and/or omissions, each and all amounting to negligence and a breach of the duty of care.

165. Defendant RXO's said wrong acts, wrongs, and/or omissions include, without limitation, the following:

a. Failing to exercise ordinary care in the interviewing, screening, vetting, and/or hiring of its agent, employee, representative, and/or servant;

b. Failing to exercise ordinary care in the performance and/or execution of a background check on its agent, employee, representative, and/or servant;

c. Failing to exercise ordinary care in the qualification of its agent, employee, representative, and/or servant as a driver and operator of a commercial motor vehicle;

d. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA in the hiring and qualification of its agent, employee, representative, and/or servant as a driver of a commercial motor vehicle;

e. Failing to exercise ordinary in the training of its agent, employee, representative, and/or servant including but not limited to training its agent, employee, representative, and/or servant to be a safe, careful, and prudent driver of a commercial motor vehicle;

f. Failing to exercise ordinary care in the monitoring and supervision of the activities of its agent, employee, representative, and/or servant;

g. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA training, monitoring, and supervision of its agent, employee, representative, and/or servant as a driver and operator of a commercial motor vehicle;

h. Failing to exercise ordinary care in maintaining, servicing, repairing, and inspecting the vehicle that its agent, employee, representative, and/or servant was operating at the time of the crash;

i. Failing to comply with, or require compliance with, the applicable state laws as well as the rules and regulations of the FMCSA regarding the maintaining, servicing, repairing, and inspecting of commercial motor vehicles such as (and including) the one being driven by its agent, employee, representative, and/or servant at the time of the crash;

j. Failing to conduct proper maintenance and/or inspections to ensure that Defendants' vehicle was in good mechanical order;

k. Failing to conduct proper maintenance and/or inspections to ensure that Defendants' vehicle was equipped with all the requisite warning devices required under the applicable state laws as well as the rules and regulations of the FMCSA;

l. Failing to supervise whether Defendant AHMAD was operating the CMV safely and adhering to FMCSRs and applicable law regarding, *inter alia*, speed of the CMV and hours-of-service regulations;

m. Failing to require its driver, Defendant AHMAD, to observe and comply with the rules and regulations of the FMCSA under, *inter alia*, 49 C.F.R. § 390.11;

n. Failing to exercise ordinary care to prevent its agent, employee, representative, and/or servant from operating a commercial motor vehicle at a time or under circumstances where its agent, employee, representative, and/or servant was

physically and/or mentally unable to safely drive and operate a commercial motor vehicle;

o. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA regarding its agent, employee, representative, and/or servant's physical and/or mental condition or ability to drive a commercial motor vehicle;

p. Allowing its agent, employee, representative, and/or servant to operate a commercial motor vehicle at a time or under circumstances Defendant RXO knew, or in the exercise of ordinary care should have known, that its agent, employee, representative, and/or servant was unable to safely drive and operate a commercial motor vehicle;

q. Failing to comply with the applicable state laws as well as the rules and regulations of the FMCSA by allowing or requiring its agent, employee, representative, and/or servant a commercial motor vehicle at a time or under circumstances when Defendant RXO knew, or should have known, that its agent, employee, representative, and/or servant was unable to safely drive and operate a commercial motor vehicle; and

r. Aiding and/or abetting violations of the applicable state laws as well as the rules and regulations of the FMCSA.

166. Defendant AHMAD was acting in the course and scope of his employment with Defendant RXO at the time of the crash. Defendant AHMAD was in the District of Colorado at the direction, and for the benefit of his employer(s) and acting in the furtherance of their business.

167. Defendant AHMAD was performing a service in the furtherance of Defendant RXO's business at the time of the crash.

168. The negligent acts and omissions of Defendant AHMAD in, *inter alia*, speeding; driving too fast for the conditions (Construction Zone); speeding in a Construction Zone, failing to keep a proper lookout; following too closely; failing to maintain a safe and proper stopping distance; reckless driving; distracted driving; aggressive driving; fatigued driving; driving in excess of allowable hours of service under the FMCSR; operating an overloaded commercial vehicle; failing to properly maintain the commercial vehicle including but not limited to adequate brakes; careless driving; reckless driving while operating the CMV in the course and scope of his employment with Defendant RXO were a proximate cause of Decedent JESSIE's death and Plaintiff's damages. Therefore, Defendant RXO is vicariously liable to Plaintiff for the negligent acts and/or omissions of its agent, employee, and/or servant, Defendant AHMAD, on the basis of *respondeat superior*.

169. All of the above acts, wrongs and/or omissions, as well as various other acts, wrongs, and/or omissions on the part of Defendant RXO as well as its agent, employee, representative, and/or servant, Defendant AHMAD, amounted to negligence and were the proximate cause Decedent JESSIE's death and Plaintiff's damages.

170. Defendant RXO is not only vicariously liable for the acts and omissions of its agent, employee, and/or servant, Defendant AHMAD, but Defendant RXO is also liable for its own negligence in hiring, supervising, and retaining Defendant AHMAD as its employee. Defendant RXO was independently negligent in its background check, training, and supervision of Defendant AHMAD and in retaining him as an employee when they knew, or should have known, he had a propensity to violate the FMCSRs and applicable state

driving safety statutes and regulations, drive negligently, carelessly, recklessly, and was incompetent.

171. Defendant RXO had an affirmative duty to investigate Defendant AHMAD's fitness and competency to drive so they knew or should have known of Defendant AHMAD's propensity to violate the FMCSRs and applicable state driving safety statutes and regulations, drive negligently, carelessly, recklessly, and was incompetent.

172. Defendant RXO knew or reasonable should have known that entrusting a vehicle to a reckless driver would result in a serious injury or death.

173. These independent acts, wrongs, and/or omissions, as well as various other acts, wrongs and/or omissions on the part of Defendant RXO amounted to negligence, negligence *per se*, and outrageous conduct, and were the proximate cause of the Decedent JESSIE's death and Plaintiff's damages.

174. Because Defendant RXO's negligence was a proximate cause of the injuries and damages sustained herein, Defendant RXO is jointly and severally liable with the other Defendants.

**TENTH CLAIM FOR RELIEF**
**(Wrongful Death)**
***(Negligent Hiring and/or Selection of Broker – LOWES and DMD)***

175. All relevant portions of this Complaint are incorporated herein as if fully set forth.

176. If it be shown that the shipper of the Load, either Defendant LOWES or DMD (referred to for purposes of this Claim for Relief collectively as "Shipper"), hired Defendant RXO (using its subsidiary Defendant RXOCS) as a broker to arrange for transport of the Load from North Carolina to Wyoming, then Shipper had a duty to exercise reasonable care to ensure that any brokers it hired to arrange for the transportation of property by motor carrier possessed the knowledge, skill, experience, available equipment, and characteristics that a

reasonable person would realize a broker must have to investigate and select a motor carrier to transport property by commercial motor vehicle in interstate commerce without creating an unreasonable risk of injuries to others.

177. Shipper failed to exercise reasonable care and carelessly and negligently did, or failed to do, one or more of the following acts:

a. Failed to exercise reasonable care to investigate whether Defendant RXO possessed the knowledge, skill, experience, available equipment, and characteristics a reasonable person would realize a broker must have to investigate and select a motor carrier to transport property by commercial motor vehicle on the public roadway without creating an unreasonable risk of injuries to others;

b. Hired Defendant RXO even though it knew, or in the exercise of reasonable care should have known, that RXO lacked the knowledge, skill, experience, available equipment, and characteristics that a reasonable person would realize a broker must have to investigate and select a motor carrier to transport property by commercial motor vehicle on the public roadway without creating an unreasonable risk of injuries to others.

178. As a direct and proximate result of Shipper breaching its duty as set forth above, Shipper negligently selected and/or hired Defendant RXO, resulting in the Load being transported by Defendants REGAL and AHMAD who were unfit, unsafe, and incompetent to safely transport the Load.

179. These independent acts, wrongs, and/or omissions, as well as various other acts, wrongs and/or omissions on the part of Shipper amounted to negligence, and were the proximate cause of the Decedent JESSIE's death and Plaintiff's damages.

180. Because Shipper's negligence was a proximate cause of the injuries and damages sustained herein, Defendant Shipper is jointly and severally liable with the other Defendants.

**DAMAGES**

181. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

182. As a direct and proximate result of the negligent, egregious, reckless, willful, wanton, outrageous and/or intentional conduct by the Defendants, Decedent JESSIE was killed and Plaintiff has suffered severe harm, loss, grief, anguish, and damages, including economic damages and damages for non-economic loss for grief, loss of companionship, pain and suffering, loss of consortium, and severe emotional distress.

183. The acts and omissions and conduct of all Defendants were negligent, reckless, willful, wanton, outrageous and done in a complete disregard for the life of Decedent JESSIE and the rights of Plaintiff and the traveling public, resulting in severe damages for grief, loss of companionship, pain and suffering, and emotional stress.

**WHEREFORE**, Plaintiff respectfully prays for judgment in her favor and against Defendants, jointly and severally, in an amount which will compensate Decedent JESSIE's children (including Plaintiff) for the injuries, damages and losses caused by Defendants, for pre-judgment and post-judgment interest as provided by law, for costs and expenses, for expert witness fees, for attorneys' fees, any applicable penalties, punitive damages, any other monetary, or other damages, relief or compensation authorized by law allowed by law or as the Court determines

equitable and just and that such damages shall not be limited by the provisions of C.R.S. § 13-21-203 as the conduct alleged herein constitutes a felonious killing as set forth in C.R.S. § 15-11-803(1)(b).

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: 05/09/2025

Respectfully submitted,

**The Paul Wilkinson Law Firm, LLC**

*This pleading was filed electronically pursuant to Rule 121, § 1-26. The original signed pleading is in counsel's file.*

By: */s/ Matthew S. Shows*
Matthew S. Shows, Esq. (#39863)
*Attorney for Plaintiff*

**Attorney for Plaintiff**

Plaintiff's Address
4845 West 8th Street.
Greeley, CO 80634

<table>
<tr><td>DISTRICT COURT, LARIMER COUNTY<br>STATE OF COLORADO<br>Larimer County Justice Center<br>201 LaPorte, Avenue, Suite 100<br>Fort Collins, CO 80521</td><td rowspan="2">DATE FILED<br>May 9, 2025 2:18 PM<br>FILING ID: 718D2A8992B3C<br>CASE NUMBER: 2025CV30437<br><br>COURT USE ONLY</td></tr>
<tr><td>Plaintiff: CARMEN SOLIS<br><br>v.<br><br>Defendants:<br>USMAN AHMAD,<br>REGAL FREIGHT LINES, LLC,<br>(an Indiana limited liability company)<br>XPO, INC.<br>(a Delaware corporation)<br>XPO LOGISTICS FREIGHT, INC.,<br>(a Delaware corporation)<br>RXO, INC.,<br>(a Delaware corporation)<br>RXO CAPACITY SOLUTIONS, LLC<br>(a Delaware limited liability company)<br>LOWE'S COMPANIES, INC.<br>(a North Carolina corporation)<br>MASTER DISPLAYS, INC. D/B/A DESIGN MASTER DISPLAYS<br>(a North Carolina corporation)</td></tr>
<tr><td>Attorney for Plaintiff<br>Matthew S. Shows, Esq., #39863<br>The Paul Wilkinson Law Firm, LLC<br>999 Jasmine St.<br>Denver, Colorado 80220<br>Telephone: (303) 333-7285<br>Facsimile: (303) 756-1878<br>Matthew@pwlfllc.com</td><td>Case Number:<br><br>Courtroom:</td></tr>
<tr><td colspan="2">DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND</td></tr>
</table>

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading by may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐This is a class action, or forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

   By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

   ☐Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date: May 9, 2025**

*/s/ Matthew S. Shows*
**Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

| | |
|---|---|
| District Court, Larimer County, Colorado<br>201 LaPorte Avenue, Suite 100<br>Ft Collins, CO 80521-2761 | DATE FILED<br>May 9, 2025 2:52 PM<br>CASE NUMBER: 2025CV30437 |
| Plaintiff(s): CARMEN SOLIS<br><br>v.<br><br>Defendant(s): USMAN AHMAD,<br>REGAL FREIGHT LINES, LLC,<br>(an Indiana limited liability company)<br>XPO, INC.<br>(a Delaware corporation)<br>XPO LOGISTICS FREIGHT, INC.,<br>(a Delaware corporation)<br>RXO, INC.,<br>(a Delaware corporation)<br>RXO CAPACITY SOLUTIONS, LLC<br>(a Delaware limited liability company)<br>LOWE'S COMPANIES, INC.<br>(a North Carolina corporation)<br>MASTER DISPLAYS, INC. D/B/A DESIGN MASTER DISPLAYS<br>(a North Carolina corporation) | ▲ **COURT USE ONLY** ▲<br>Case Number: 2025CV30437<br><br>Courtroom: 5B |

**NOTICE JUDICIAL CIVIL CASE MANAGEMENT**

All civil cases are subject to judicial screening and case management. This case is assigned to Judge GREGORY LAMMONS-5B. Trial will not be set until the Court determines that a trial setting is appropriate. Within 30-40 days of filing, your case will be reviewed and appropriate orders sent to counsel and pro se parties

It is imperative that all returns of service be filed promptly with the Court, so that the Court, when reviewing the case, can accurately assess its status.

Plaintiff's counsel shall provide a copy of this notice to all counsel (or pro se parties) who enter appearances.

The Civil Case Cover Sheet (JDF 601) required pursuant to C.R.C.P. 16.1 was to be included with your initial pleading. If it was not included, it must be filed within 14 days from the date of this notice.

Dated May 9, 2025.



Revised 12/20/24

Chief Judge Susan Blanco

Copies sent to: ATP via JPOD